UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIAN FLORES ALBARRAN, )<br>)<br>Plaintiff/Petitioner, )<br>)<br>v. )<br>)<br>RICARDO WONG, Chicago Field Office )<br>Director of Immigration and Customs Enforcement; )<br>LORETTA LYNCH, United States Attorney )<br>General; and JEH JOHNSON, Secretary of )<br>Homeland Security, )<br>)<br>Defendants/Respondents. ) | No. 15 C 5691<br>Hon. Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

On June 26, 2015, Plaintiff Julian Flores Albarran ("Flores"), a Mexican citizen, filed this complaint against Defendants Ricardo Wong, Loretta Lynch, and Jeh Johnson ("Defendants"), seeking relief from the refusal of the Department of Homeland Security ("DHS" or "ICE") to stay or rescind an order of removal.[1] Presently before us is Defendants' motion to dismiss, which we grant for the reasons discussed below.

## BACKGROUND

Flores was removed from the United States in 1999 under an expedited order but then returned unlawfully in 2000. (Compl. ¶¶ 3, 7.) Prior to his final reentry, the 1999 removal order was reinstated on one occasion, pursuant to 8 U.S.C. § 1231(a)(5).[2] (*Id.* ¶¶ 8–9.) In 2006, Flores

---

[1] Flores also sought release from custody on an order of supervision, which he apparently received on November 2, 2015. (Opp'n ¶ 15; Reply at 2 n.1.) Because he was also ordered to report to a different facility on December 15, 2015, it is unclear whether he is currently in custody. (Opp'n ¶ 15.)

[2] Section 1231(a)(5) provides that a "prior order of removal is reinstated from its original date" if the Attorney General "finds that an alien has reentered the United States illegally after having been removed." 8 U.S.C. § 1231(a)(5). In that event, the reinstated prior order "is not subject to

1

was convicted of driving under the influence in Lake County and was sentenced to one year of court supervision. (*Id.* ¶ 10.) While living in the United States over the past fifteen years, Flores married, became a father to two children (who are U.S. citizens), held steady employment, and became active in his church community. (*Id.* ¶¶ 3, 7, 14 & Ex. D (Applic. for Stay).)

In June 2014, federal agents apprehended Flores. (*Id.* ¶ 11.) A year later, on June 3, 2015, DHS issued Flores a Notice of Intent/Decision to Reinstate, Form I-871. (*Id.* ¶ 12 & Ex. B (Form I-871).) The notice informed Flores that DHS intended to reinstate the prior August 1999 order of removal pursuant to 8 U.S.C. § 1231(a)(5)[3] and that he was subject to removal by virtue of the reinstatement. (Ex. B (Form I-871); *see* Compl. ¶ 12.) Shortly thereafter, Flores filed a Form I-246, an application for a stay of removal. (Compl. ¶¶ 13–15 & Ex. D (Applic. for Stay).) In his application, Flores requested a stay of removal for one year, based on the hardship his family would face upon his removal. (Compl. ¶ 14 & Ex. D (Applic. for Stay).) With his application, Flores submitted supporting documentation, including his tax returns, his children's medical and school records, and letters from his employers, fellow church members, and others. (Compl. ¶ 14.)

With the application for a stay, Flores' attorney submitted a statement directed to Director Wong, addressing a November 14, 2014 memorandum issued by Secretary Johnson ("Johnson Memo"). (*Id.* ¶ 15.) The Johnson Memo set forth policies and priorities for the apprehension, detention, and removal of aliens. (*Id.* & Ex. E (Johnson Memo).) For example, the Johnson Memo indicates that aliens who have committed a "significant misdemeanor,"

---

being reopened or reviewed." *Id.* In addition, the alien in question "is not eligible and may not apply for any relief under this chapter" and "shall be removed under the prior order at any time after the reentry." *Id.*
[3] The Form I-871 references Section 241(a)(5) of the Immigration and Nationality Act ("INA"), which is codified as 8 U.S.C. § 1231(a)(5). (*See* Ex. B (Form I-871).)

including "driving under the influence," are a second-level priority for apprehension and removal. (Ex. E (Johnson Memo) at 3–4.) The memorandum explains, *inter alia*, that "removal of these aliens must be prioritized unless they qualify for asylum or another form of relief" or if an ICE Field Office Director determines that "there are factors indicating the alien is not a threat to national security, border security, or public safety, and should not therefore be an enforcement priority." (*Id.* at 4.) Based on the Johnson Memo, Flores' attorney argued that he should not be considered a second-level removal priority because of various factors showing that he is not a threat, including, among others, the length of time since his conviction, the length of time he has spent in the United States, and his family and community ties here. (Compl. ¶ 15 & Ex. D (Applic. for Stay).)

On June 17, 2015, ICE denied Flores' request for a stay of removal. The one-page June 17, 2015 letter, signed by someone "for" Director Wong, briefly recounted Flores' history and indicated that ICE had "carefully considered the individual facts of this case" along with the Johnson Memo. (Compl. ¶ 16 & Ex. A (6/17/15 Denial).) ICE then denied Flores' request, stating that "the favorable exercise of discretion [was] not warranted." (Ex. A (6/17/15 Denial).)

On June 26, 2015, Flores submitted a request for rescission of the reinstated removal order, or release on an order of supervision, along with a new Form I-246 petition for a stay. (Compl. ¶ 17.) His request incorporated and expanded upon his earlier Form I-246. (*Id.*) On September 15, 2015, ICE denied this second petition for a stay of removal. (*Id.* ¶ 18.) The letter, again signed for Director Wong by another individual, recited Flores' brief history and described the materials included with his application. (*Id.* & Ex. C (9/15/15 Denial).) ICE reiterated that it "carefully considered the individual facts of this case consistent with the [Johnson Memo]" and "has determined that the favorable exercise of discretion is not

warranted." (Ex. C (9/15/15 Denial) at 2.) The letter informed Flores that his request to rescind the reinstatement of the prior removal order was also denied. (*Id.* at 2.)

In his complaint, Flores seeks declaratory and injunctive relief, alleging that Defendants "have abused their discretion" and have "denied his application for a stay of removal and request for rescission of the Form I-871 or release on an order of supervision in violation of federal law." (Compl. ¶ 20.) He contends that DHS' denial letters are bare conclusions, lacking the thorough and individual analysis called for by the Johnson Memo. (*Id.* ¶¶ 23–27.) Flores also argues that the lack of Director Wong's signature on the September 15, 2015 decision "evidences the improper delegation of adjudication of an issue that the Johnson Memo clearly restricts to the ICE Field Office Director." (*Id.* ¶ 28; *see also id.* ¶ 29 (claiming that it is unclear whether Director Wong ever considered the factors identified in Flores' application).)

Flores also seeks habeas corpus relief, arguing that Defendants' "decision to deny him a stay of removal" resulted in "deprivation of process and liberty" in violation of the United States Constitution. (*Id.* ¶¶ 30–31.) Flores asserts that Director Wong's denial of a stay "must be made in a manner consistent with the law." (*Id.* ¶ 31.)

Flores alleges that he has exhausted all administrative remedies, faces ongoing irreparable injury, and has no other avenues available to him to prevent imminent removal. (Compl. ¶¶ 32–33, 35.) ICE has informed Flores that he will not be removed to Mexico at this time. (*Id.* ¶ 34.) Flores asks that we: (1) order Defendants to "refrain from removing him . . . pending adjudication" of this action; (2) issue a writ requiring his immediate release from custody; (3) declare that the Defendants' denials are "arbitrary and capricious and an abuse of discretion;" and (4) order Defendants to "readjudicate his request for rescission of the Form I-871 or release on an order of supervision and Form I-246 request for a stay of removal in a

4

manner consistent with the law and applicable memoranda." (Compl. at 10–11.)  Defendants move for dismissal on the grounds that we lack jurisdiction to hear Flores' claims.

## STANDARD OF REVIEW

Defendants' motion challenges our jurisdiction and thus falls under Federal Rule of Civil Procedure 12(b)(1).  Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case.  *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996).  Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Jurisdiction is the "power to decide" and must be conferred upon the federal court.  *In re Chi., Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).  In reviewing a Rule 12(b)(1) motion, we may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).  A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met.  *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

To the extent that the motion also falls under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).  We may grant a Rule 12(b)(6) motion only if a complaint lacks enough facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not contain "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.

## ANALYSIS

In their motion, Defendants argue that we lack jurisdiction to hear Flores' claims, which challenge his pending removal. Defendants assert that, by virtue of 8 U.S.C. § 1252(g), Congress has precluded us from hearing such claims—whether they are raised under the INA, the Administrative Procedure Act, the Declaratory Judgment Act, or otherwise.

### A. Applicability of § 1252(g) to Flores' Claims

In pertinent part, § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g). While some types of claims may be heard, this provision blocks our review of specific types of administrative decisions. *Id.*; *Hussein v. Keisler*, 505 F.3d 779, 783–84 (7th Cir. 2007); *Wigglesworth v. I.N.S.*, 319 F.3d 951, 960 (7th Cir. 2003); *Gomez-Chavez v. Perryman*, 308 F.3d 796, 800–01 (7th Cir. 2002); *Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002). As the Supreme Court has explained, § 1252(g) prevents us from reviewing "three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* proceedings, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 943 (1999) (internal quotations omitted) (emphasis in original); *Wigglesworth*, 319 F.3d at 960–61; *Sharif*, 280 F.3d at 787. In addition, "[t]hese strict limitations apply not only to the Attorney General's positive actions, but

also to [her] refusals to take action." *Gomez-Chavez*, 308 F.3d at 800; *Wigglesworth*, 319 F.3d at 961; *Chapinski v. Ziglar*, 278 F.3d 718, 720–21 (7th Cir. 2002) ("If judicial review of a decision to commence proceedings is barred, it follows that section 1252(g) also precludes judicial review of the . . . decision *not* to commence removal proceedings."). Importantly, an alien cannot evade § 1252(g) by attempting to recharacterize a claim that, at its core, attacks the decision to execute a removal order. *See Gomez-Chavez*, 308 F.3d at 800; *Lemos v. Holder*, 636 F.3d 365, 367 (7th Cir. 2011); *Chapinski*, 278 F.3d at 721; *Fedorca v. Perryman*, 197 F.3d 236, 240 (7th Cir. 1999); *Seol v. Holder*, 13 C 1379, 2013 WL 3835370, at *3 (N.D. Ill. July 24, 2013); *Dave v. I.N.S.*, 03 C 852, 2003 WL 466006, at *1 (N.D. Ill. Feb. 20, 2003).

Here, Flores challenges Defendants' discretionary denials of his requests for a stay of removal, for rescission of the reinstatement order, and for release on an order of supervision. As his requested relief, Flores asks us to order Defendant to refrain from removing him. He seeks a declaration that Defendants' decisions were an abuse of their discretion and were arbitrary and capricious. He asks us to order Defendants to readjudicate his requests. (Compl. at 10–11.) Based on our interpretation of his claims and his requested relief, Flores challenges Defendants' decision to execute the reinstated removal order and the related decision-making process. He plainly seeks to undo Defendants' reinstatement of the prior removal order and stay the execution thereof.

Although neither party cites much authority, the Seventh Circuit has weighed in on § 1252(g)'s applicability in factually-similar scenarios. The Seventh Circuit has held explicitly that "[a] request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order," and is not subject to judicial review. *Sharif*, 280 F.3d at 787 (noting further that § 1252(g) "does not differentiate among kinds of relief"); *see also Dorgan v. Ridge*,

7

04 C 7401, 2005 WL 106483, at *2 (N.D. Ill. Jan. 19, 2015); *Bonilla v. U.S. Dep't Homeland Sec., Dist. Dir.*, 03 C 2077, 2003 WL 1860517, at *2 (N.D. Ill. Apr. 9, 2003). The Seventh Circuit has also rejected a petition for judicial review in a comparable case, *Lemos v. Holder*. There, Tapia, a Mexican citizen, was removed in 1997 but returned unlawfully twice. 636 F.3d at 366. After he was caught in 2010, DHS reinstated the prior 1997 removal order and sought to remove Tapia, for the third time. *Id.* Although Tapia asked DHS to stay the removal and rescind the 1997 order, DHS declined to do so. *Id.* Tapia then petitioned to the Seventh Circuit for relief, seeking: "(a) a stay of removal; (b) the rescission of the 2010 decision to use the 1997 order as the basis for another removal; and (c) the commencement of a new removal proceeding." *Lemos*, 636 F.3d at 366–67. The Seventh Circuit found that Tapia's claims fell under § 1252(g) and dismissed his petition for lack of jurisdiction. *Id.* at 367. Consistent with our understanding of § 1252(g) and governing precedent, we lack jurisdiction to hear any of Flores' claims.

### B. Applicability of § 1252(g) to DHS Actions

In opposition to the motion, Flores argues that § 1252(g) does not apply because he seeks relief from decisions made by DHS, not decisions made by the Attorney General.[4] As Flores

---

[4] Notably, Flores does not contend that his claims escape the gravity of § 1252(g) because they "present[s] substantial constitutional issues or bizarre miscarriages of justice." *Chapinski*, 278 F.3d at 721; *Wigglesworth*, 319 F.3d at 957; *Bhatt v. Reno*, 204 F.3d 744, 746–47 (7th Cir. 1999) (further explaining that, for such claims, "deportees can seek the safety valve of direct review in the court of appeals"). This omission is also fatal to his habeas claim, over which we lack jurisdiction. *Sharif*, 280 F.3d at 787 (stating that the limits of § 1252(g) apply to habeas petitions); *Fedorca*, 197 F.3d at 239–40 (affirming dismissal of habeas petition brought under 28 U.S.C. § 2241, because the relief sought by Fedorca (i.e., a stay of deportation) was barred by § 1252(g)); *see also Khan v. Holder*, 608 F.3d 325, 328 (7th Cir. 2010) (noting that the review-limiting provision of § 1252(g) "left open the opportunity for aliens . . . to bring constitutional issues directly before the courts of appeals"); *Gomez-Chavez*, 308 F.3d at 800 (stating that "district courts continue to have jurisdiction . . . to entertain habeas corpus petitions based on pure questions of law"); *Dorgan*, 2005 WL 106483, at *2.

points out, the text of § 1252(g) states on its face that we lack authority to hear claims arising from a "decision or action by the Attorney General." 8 U.S.C. § 1252(g). The subsection does not mention DHS. Nonetheless, this argument is without merit.

"When Congress passed the Homeland Security Act of 2002, it transferred to DHS authority over all functions that the former Immigration and Naturalization Service . . . or its officers previously carried out." *Elgrarib v. Napolitano*, 600 F.3d 597, 606–07 (6th Cir. 2010); 6 U.S.C. § 251; *Genov v. Ashcroft*, 03 C 672, 2004 WL 1146113, at *9–10 (N.D. Ill. May 13, 2004) (explaining that DHS became "explicitly vested with responsibility" over "administering and enforcing the INS's detention and removal program"); *see also Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 499 n.1 (7th Cir. 1999). As the Seventh Circuit has recognized, "[u]nder 6 U.S.C. § 557, references in federal law to any agency or officer whose functions have been transferred to DHS shall be deemed to refer to the Secretary of DHS or other official or component to which the functions were transferred." *Durable Mfg. Co.*, 578 F.3d at 499 n.1; *Buddhi v. Holder*, 344 F. App'x 280, 284 n.1 (7th Cir. 2009) (reading "Secretary of Homeland Security" into another INA provision despite the sole reference to "Attorney General"); *see Elgharib*, 600 F.3d at 607; *Bonilla*, 2003 WL 1860517, at *2 n.3; *see also* 6 U.S.C. § 557. Accordingly, pursuant to the Homeland Security Act, references to the Attorney General in § 1252 now also include DHS, and § 1252(g) applies equally to both. *Durable Mfg. Co.*, 578 F.3d at 499 n.1; *Bonilla*, 2003 WL 1860517, at *2 n.3; *see Young Dong Kim v. Holder*, 737 F.3d 1181, 1185 (7th Cir. 2013) (treating "Attorney General" and "DHS" synonymously with respect to § 1252(g)); *see also Aguilar-Alvarez v. Holder*, 528 F. App'x 862, 870 & n.5 (10th Cir. 2013); *Elgrarib*, 600 F.3d at 607; *Ali v. Mukasey*, 524 F.3d 145, 150–51 & n.5 (2d Cir. 2008). Congress' election not to specifically revise the language of § 1252(g) since

creating DHS does not blunt the impact of the statutory transition of authority from INS to DHS. 6 U.S.C. §§ 251, 557.

Because § 1252(g) applies to Flores' claims for relief—whether based on the decisions of the Attorney General, or DHS, or both—we lack jurisdiction over this action.

### C. Jurisdiction under the APA

We turn next to briefly address Flores' additional contention that the Administrative Procedure Act ("APA") grants us jurisdiction. (Opp'n ¶¶ 24–28; *see also* Compl ¶¶ 1, 21.) The APA entitles "[a] person suffering legal wrong because of agency decision, or adversely affected or aggrieved by agency action" to judicial review of the agency decision or action at issue. 5 U.S.C. § 702; *see Kightlinger v. Napolitano*, 500 F. App'x 511, 515 (7th Cir. 2013) (further explaining that, where applicable, federal court jurisdiction "over an APA action would be conferred by [28 U.S.C.] § 1331"). Flores asserts that Defendants have violated the APA by failing to properly adhere to the Johnson Memo. (Opp'n ¶ 25.)

Flores' argument is unavailing, however, because the APA does not apply to agency decisions rendered under statutes that "preclude judicial review." 5 U.S.C. § 701(a)(1); *Kightlinger*, 500 F. App'x at 515 (citing *Califano v. Sanders*, 430 U.S. 99, 108, 97 S. Ct. 980, 986 (1977)). As discussed above, § 1252 explicitly forecloses our review of the agency actions disputed here, which arise from Defendants' decision to execute the reinstated removal order against Flores. Because the statute precludes judicial review, the APA does not apply.[5] *Kightlinger*, 500 F. App'x at 515 (affirming dismissal of APA claim because "8 U.S.C.§ 1252 specifically preclude[d] district-court review of Kightlinger's order of removal"); *Alghadbawi v.*

---

[5] We need not address the more involved question of whether the APA does not apply to Flores' claims under Section 701(a)(2). Under that exception, APA review is not permitted for any action or decision that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

*Napolitano*, 10 C 1330, 2011 WL 4390084, at *4 (N.D. Ill. Sept. 19, 2011) ("Because specific statutes bar jurisdiction, [including 8 U.S.C. § 1252(a)(2)(B)], Mr. Alghadbawi may not rely on [the APA or the Mandamus Act]."); *see Mata v. Sec'y of Dep't of Homeland Sec.*, 426 F. App'x 698, 399–700 (11th Cir. 2011) (concluding that "[b]ecause 8 U.S.C. § 1252 bars review of orders of removal in a district court," neither the mandamus statute, nor the APA, nor the general jurisdiction statute provided a jurisdictional basis); *Ebron v. I.C.E.*, 12 C 272, 2015 WL 5870273, at *1 (M.D. Fla. Oct. 5, 2015); *see, e.g.*, *Lalani v. Perryman*, 105 F.3d 334, 337 (7th Cir. 1997) ("[T]he APA is a not a useful tool for aliens challenging immigration decisions."); *Jablonksi v. Holder*, 13 C 734, 2014 WL 772946, at *2 (N.D. Ill. Jan. 27, 2014).

In addition, Flores' reliance on the Johnson Memo as the underlying basis for his APA claim is misplaced. In a relatively recent opinion in *Young Dong Kim v. Holder*, the Seventh Circuit evaluated a similar memorandum, which was issued in June 2011 by the former ICE director, John Morton ("Morton Memo").[6] 737 F.3d at 1184–85. In that case, plaintiffs argued that the Board of Immigration Appeals ("BIA"), in its review of their claims, had failed to consider the prosecutorial discretion provided by the Morton Memo. The Morton Memo identified which ICE employees had prosecutorial discretion and listed many factors they should weigh when exercising discretion in removal proceedings. *Id.* at 1184–85; *see also* Morton Mem., www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf. The Seventh Circuit dismissed the petition, however, on grounds also applicable here. Although the court noted several problems with plaintiffs' theory,[7] it ultimately concluded that "exercises of prosecutorial discretion by the DHS generally are immune from judicial review." *Kim*, 737 F.3d

---

[6] The Johnson Memo expressly rescinded and superseded the Morton Memo, along with other ICE memoranda. (Ex. E (Johnson Memo) at 2.)

[7] The court held, for example, that the Morton Memo did not apply to the BIA at all. *Kim*, 737 F.3d at 1185 (finding that the BIA was not identified as an entity with prosecutorial discretion).

at 1185. The court explained that "[w]hether to exercise the prosecutorial discretion outlined in the [Morton Memo] plainly comes within the purview of [S]ection 1252(g)," which deprived it of jurisdiction. *Id.* We reach the same conclusion here with respect to decisions based on the Johnson Memo.[8] No matter how he characterizes his claims, Flores' assertion that Defendants failed to comply with the Johnson Memo runs squarely into § 1252(g).[9]

---

[8] The Seventh Circuit also noted in *Kim* that the Morton Memo—like the Johnson Memo—did not create any substantive or procedural rights. *Kim*, 737 F.3d at 1185. Indeed, the Johnson Memo states that its "guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter." (Ex. E (Johnson Memo) at 6.) Because the Johnson Memo granted no rights or benefits to Flores, he cannot enforce its provisions here or otherwise challenge Defendants' alleged departure from its guidance.

[9] We add that neither the Declaratory Judgment Act ("DJA"), 8 U.S.C. § 2201(a), nor the mandamus statute, 28 U.S.C. § 1361, grant us jurisdiction under these circumstances. Because the DJA "is not an independent grant of jurisdiction," jurisdiction over DJA claims "must be predicated on some other statute." *Rueth v. E.P.A.*, 13 F.3d 227, 231 (7th Cir. 1993); *Jung Ok Seol v. Holder*, 13 C 1379, 2013 WL 3835370, at *3 (N.D. Ill. July 24, 2013) ("The [DJA] does not enlarge the jurisdiction of the federal courts; it is procedural only."). There is no other source of jurisdiction here. And Flores' claim for mandamus relief is no different than his other claims, such that the § 1252(g) bar applies. *Bhatt*, 204 F.3d at 914–15; *Chapinski*, 278 F.3d at 721 (dismissing petition for writ of mandamus in light of § 1252(g)). Even if we had jurisdiction, Flores has not adequately alleged that "he has a clear right to the relief sought," as necessary to proceed with a mandamus claim. *Kitphothiyan v. Ashcroft*, 74 F. App'x 623, 627 (7th Cir. 2003); *see Afsharzadehyadzi v. Perryman*, 214 F. Supp. 2d 884, 888 (N.D. Ill. 2002). As best we can tell, he disputes only discretionary decisions made by Defendants, and mandamus relief would not be appropriate. *Afsharzadehyadzi*, 214 F. Supp. 2d at 888; *see* 8 C.F.R. § 241.6 (a) ("Administrative Stay of Removal") (stating that a request for a stay of removal shall be filed on Form I-246 and will be considered by an ICE official, who may, "in his or her discretion," grant a stay "for such time and under such conditions as he or she may deem appropriate"); *see also Kerr v. U.S. Dist. Ct. N.D. Cal.*, 426 U.S. 394, 403, 96 S. Ct. 2119, 2124 (1976) (noting that mandamus is an extraordinary remedy); *Antonishin v. Keisler*, 627 F. Supp. 2d 872, 881 (N.D. Ill. 2007).

## CONCLUSION

While we are not unsympathetic to the serious consequences facing Flores and his family, we lack jurisdiction over his claims and must grant Defendants' motion and terminate this case. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 19, 2016
       Chicago, Illinois